UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 20-50660-gs |
|  | . | Chapter 7 |
| METAL RECOVERY SOLUTIONS, | . | |
| INC., | . | |
|  | . | |
| Debtor. | . | |
| . . . . . . . . . . . . . | . | |
| CHRISTOPHER P. BURKE, in his | . | Adv. No. 21-05066-gs |
| Capacity as Chapter 7 Trustee | . | |
| of METAL RECOVERY SOLUTIONS, | . | |
| INC., | . | |
|  | . | |
| Plaintiff, | . | |
|  | . | |
| v. | . | 300 Booth Street |
|  | . | Reno, NV 89509 |
| METAL RECOVERY SOLUTIONS, | . | |
| INC., et al., | . | Thursday, April 6, 2023 |
| Defendants. | . | 11:36 a.m. |
| . . . . . . . . . . . . . | . | |

TRANSCRIPT OF MOTION TO SELL CLAIMS AND OTHER
BANKRUPTCY ESTATE ASSETS FILED BY MICHAEL LEHNERS ON BEHALF OF
CHRISTOPHER P. BURKE [68];
STATUS HEARING RE: ADVERSARY CASE 21-05066, COMPLAINT FILED BY
CHRISTOPHER P. BURKE, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF
METAL RECOVERY SOLUTIONS, INC. VS. METAL RECOVERY SOLUTIONS,
INC., THOMAS SEAL, JETTE SEAL, DIFFERENTIAL ENGINEERING, INC.,
MARK SHONNARD, FEE AMOUNT 350 [1]
BEFORE THE HONORABLE GARY SPRAKER
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator:        David Lindersmith, ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1

```
APPEARANCES:

For Christopher P.        MICHAEL LEHNERS, ESQ.
Burke:                    429 Marsh Avenue
                          Reno, NV 89509
                          (775) 786-1695


For Element Global,       Law Offices of Amy N. Tirre, P.C.
Inc.:                     By:  AMY N. TIRRE, ESQ.
                          3715 Lakeside Drive
                          Reno, NV 89509
                          (775) 828-0909


For Thomas Seal and       Fletcher & Lee
Jette Seal:               By:  ELIZABETH A. FLETCHER, ESQ.
                          448 Ridge Street
                          Reno, NV 89501
                          (775) 324-1011


For Geo-Logic             Kaempfer Crowell
Associates, Inc.:         By:  LOUIS M. BUBALA, III, ESQ.
                          50 West Liberty Street, Suite 700
                          Reno, NV 89501
                          (775) 852-3900


                          Rutan & Tucker LLP
                          By:  RONALD P. OINES, ESQ.
                          18575 Jamboree Road, 9th Floor
                          Irvine, California 92612
                          (714) 641-5100


Also Present:             CHRISTOPHER P. BURKE, ESQ.

ZOOM APPEARANCES:

For Jex Technologies       Foley & Lardner LLP
Corp.:                    By:  ELLEN E. OSTROW, ESQ.
                          95 South State Street, Suite 2500
                          Salt Lake City, UT 84111
                          (801) 401-8952
```

1

1          (Proceedings commence at 11:36 a.m.)

2              THE COURT:  We are on record for the 11:30 calendar.

3     The only matter before the Court is Metal Recovery Solutions,

4     Incorporated continued hearing on the motion to sell claims and

5     other bankruptcy estate assets, along with the companion

6     hearing within the related adversary Burke v. Metal Recovery

7     Solutions, Inc.  I believe we continued the status hearing as

8     well, but I don't think there's really going to be much of a

9     status hearing.  With that, we'll go ahead and take

10    appearances.

11             Ms. Tirre, since you're at the podium, would you lead

12    us off, please?

13             MS. TIRRE:  Yes, thank you, Your Honor.  Amy Tirre on

14    behalf of Element Global, Inc.

15             THE COURT:  All right, thank you.  Mr. Lehners?

16             MR. LEHNERS:  Good morning, Your Honor.  Michael

17    Lehners appearing as counsel for the Chapter 7 trustee,

18    Christopher Burke, who is also present with me in court.

19             THE COURT:  Thank you.

20             MS. FLETCHER:  Good morning, Your Honor.  Elizabeth

21    Fletcher on behalf of Tom and Jette Seal.

22             THE COURT:  Thank you, Ms. Fletcher.

23             Mr. Bubala and Mr. Oines?

24             MR. BUBALA:  Thank you, Your Honor.  Louis Bubala and

25    Ronald Oines on behalf of Geo-Logic Associates, joined by Gary

 1  Lass, the CEO of the company.

 2              THE COURT:  Thank you.  All right.

 3              And do we have Ms. Ostrow on the video?

 4              MS. OSTROW:  Yes, Your Honor.  Good morning, thanks

 5  for allowing me to appear via Zoom.

 6              THE COURT:  Thank you.  All right.  I believe

 7  that's --

 8              MS. OSTROW:  On behalf of Jex.

 9              THE COURT:  Understood.  I believe that is all

10  counsel.

11              THE CLERK:  We also have (indiscernible).

12              THE COURT:  Oh, does any other party counsel wish

13  make an appearance?

14              All right, Ms. Tirre, you may proceed.

15              MS. TIRRE:  Thank you, Your Honor.  This morning we

16  were to have an evidentiary hearing with a witness regarding a

17  finding of good faith under 363(m) for the sale.  And while we

18  adjourned yesterday's hearing with the idea that Mr. Steve

19  Gagnon, who is the CEO of Element Global, Inc., would appear

20  this morning, between yesterday afternoon and this morning, I'm

21  informed that he is very concerned and has been instructed by

22  his board of directors not to appear for this reason.  It is a

23  publicly traded company.  It has multiple transactions.  He is

24  concerned about not having SEC counsel available and counsel

25  was not available today.  So it's really a matter of timing and

1    process.

2          So I have two offers to the Court.  One is we proceed

3    through an alternative, direct testimony method where my client

4    will prepare, and we will file a declaration as soon as

5    possible with the testimony to support a good faith finding

6    under 363(m).  And then once the declaration is on file, then

7    any party who wishes to object and seek an evidentiary hearing

8    at that point, we could conduct an evidentiary hearing, and

9    allow Mr. Gagnon to be cross-examined at that point.

10          Further, I am prepared, right now, to make a proffer

11   of what that testimony would be on the record, so the Court and

12   the other parties have that available to them.

13          THE COURT:  I will open it up to other parties

14   participating to see what their preference is.

15          MR. LEHNERS:  Good morning, again, Your Honor.  After

16   I left court yesterday, I did some research on what a 363(m)

17   finding requires.  It has to find, basically, a good faith

18   purchaser, absence of collusion, et cetera and et cetera.  And

19   the findings cannot be boiler plate, the Ninth Circuit is

20   explicit on that; they have to be actual and real.  For that

21   reason, I believe live testimony is relevant with respect to

22   that narrow of a scope.  We would require live testimony in

23   order to have the Court make a finding of good faith under

24   363(m).  Now I think that finding should be subject to cross-

25   examination, and it should be live.

```
 1            THE COURT:  Thank you.  Mr. Bubala?  Mr. Oines?
 2            MR. BUBALA:  Lou Bubala, on behalf of GLA.  Your
 3   Honor, we agree with that.  Ms. Tirre has proposed a
 4   declaration.  We think that's -- she indicated, I think, it
 5   would be filed on Monday.  If so, okay, but we would like to
 6   have -- go ahead and schedule a hearing at this point, so we
 7   can do a cross-examination by Zoom of Mr. Gagnon or whoever the
 8   corporate representative is, because we're concerned that we're
 9   falling into another situation of delay.  We've already got a
10   19-day window before there's a payment once the order is
11   entered, and, you know, we're not even starting that clock.  So
12   the sooner the better, and I think that's the sum of our
13   concerns.
14            THE COURT:  All right.  Ms. Ostrow?
15            MS. OSTROW:  I don't have anything to add, Your
16   Honor.
17            THE COURT:  Okay.
18            MS. OSTROW:  Thank you.
19            THE COURT:  Ms. Tirre, any response?
20            MS. TIRRE:  Your Honor, it's just a matter of
21   timing --
22            THE COURT:  Sure.
23            MS. TIRRE:  -- and making sure my client's available
24   and I'm available.
25            THE COURT:  Do you know when his availability --
```

```
 1              MS. TIRRE:  I do not, but he's on stand-by so I can
 2   contact him.
 3              THE COURT:  Why don't we go off record, and then
 4   we'll let you contact him so we can make sure that he's
 5   available for the date we're going to set.
 6              MS. TIRRE:  Okay.  Do you have a date in mind, Your
 7   Honor?
 8              THE COURT:  I am thinking in the afternoon.  Well, it
 9   depends on how fast -- if we're going to do this fast, Tuesday
10   afternoon would work.
11              MS. TIRRE:  Okay, Tuesday the 11th?
12              THE COURT:  The 11th.
13              MS. TIRRE:  Uh-huh.  That should be fine.
14              THE COURT:  Say, 1:30, local time.
15              MS. TIRRE:  Okay.  I may have to reschedule
16   something.  I'm supposed to be on the island of Maui, and I
17   have something planned that morning.  So -- but I'm open on
18   Wednesday, the 12th, and Thursday, the 13th.  But let's do
19   this:  I'll reschedule my plans on the 11th, and we'll do it on
20   the 11th, at 1:30, if Mr. Gagnon is available.
21              THE COURT:  Hold on.  I can do it also on Wednesday
22   afternoon --
23              MS. TIRRE:  Okay.
24              THE COURT:   -- if that helps.
25              MS. TIRRE:  So he can either do Tuesday afternoon at
```

```
 1   1:30 or Wednesday afternoon at 1:30?  Those are my choices?
 2              THE COURT:  Correct.
 3              MS. TIRRE:  Okay.  Thank you.
 4              THE COURT:  Off record.
 5         (Recess taken at 11:42 a.m.)
 6         (Proceedings resumed at 11:48 a.m.)
 7              THE COURT:  All right.  Thank you.  We're back on the
 8   record in the Metal Recovery at main case and adversaries.
 9              Ms. Tirre?  Mr. Lehners?
10              MR. LEHNERS:  Your Honor, my schedule is clear for
11   Tuesday afternoon.  Unfortunately, Mr. Burke has something at
12   two o'clock and he believes that if we could start earlier,
13   maybe at one o'clock, we can probably squeeze this in and get
14   it done, but that's up to the Court's convenience.
15              MS. TIRRE:  And my client's available on Wednesday.
16              THE COURT:  Well, we're going to need your client.
17              MS. TIRRE:  I think so.
18              THE COURT:  Mr. Lehners, is it you or Mr. Burke or
19   both, that are unavailable on Wednesday?
20              MR. LEHNERS:  Mr. Burke has court all day Wednesday.
21              THE COURT:  All day on Wednesday.  Let me see.
22              Mr. Leonard Smith, do you know what the -- oh,
23   they're discovery issues on Monday.
24              Well, what's the proposal, Counsel?
25              MS. TIRRE:  Can you go forward without Christopher?
```

9

```
 1              MR. LEHNERS:  No, I won't.

 2              MR. BUBALA:  I'll be here on Monday.

 3              MR. LEHNERS:  Monday?  I know Monday's wide open for

 4    me, but I didn't think it was on the table.

 5              MS. TIRRE:  I'm on a plane.

 6              MR. LEHNERS:  Oh.

 7              THE COURT:  She's getting to Maui.

 8              MS. TIRRE:  I'm not available.

 9              THE COURT:  Ms. Ostrow, do you want to help us out?

10    Do you have any -- any comments?

11              MS. OSTROW:  Wednesday works for me, Judge.

12              THE COURT:  All right.

13              MR. BUBALA:  Your Honor, as much as I appreciated

14    Mr. Burke's attendance and participation, as a client as

15    opposed to counsel, I mean, the schedule is what a schedule is,

16    and if he can't attend on Wednesday, we should go forward on

17    Wednesday.  His representative, his counsel, will be here.

18              MR. LEHNERS:  Your Honor --

19              THE COURT:  Mr. Burke, do you want to attend?

20              MR. BURKE:  Yes, Your Honor.

21              THE COURT:  All right.

22              MR. BURKE:  I don't know if I'm required to --

23              THE COURT:  Let's --

24              MR. BURKE:  -- speak directly.

25              THE COURT:  Let's check calendars for Monday, April
```

1  17th, anytime other than 9:30 to 10:30.

2          MS. TIRRE:  I'm just thinking out loud -- I am not

3  available at 1 p.m., Hawaii time, which I believe is 4 p.m.,

4  Pacific Time, so until 4 p.m., Pacific Time, I should be

5  available.

6          THE COURT: Okay.

7          MR. BUBALA:  Yeah.  And Your Honor, I think you're

8  not -- I mean, I don't know what else you have on your 9:30

9  calendar, but I think that Nixon issue will go away based on

10  your hearing on the 10th.

11          THE COURT:  Okay.  That was the only thing I believe

12  I have on on that Monday.  So that's the --

13          MS. TIRRE:  And I will call my client about Monday,

14  April 17th.

15          THE COURT:  Go ahead.

16          MS. TIRRE:  Thank you.

17          THE CLERK:  And we'll go off record?

18          THE COURT:  Off record.

19      (Recess taken at 11:51 a.m.)

20      (Proceedings resumed at 11:54 a.m.)

21          THE COURT:  All right.  Back on record.  Ms. Tirre?

22          MS. TIRRE:  Yes.  My client, Mr. Gagnon, will be

23  available --

24          MR. LEHNERS:  Yeah, you'll have to wait.

25          MS. TIRRE:   -- on Monday, the 17th.  He will be in

1  England, eight hours ahead.  I will be in -- on the island of

2  Kauai, three hours behind, so our -- my request is, I think you

3  were proposing 9:30 in the morning?  Is that true?  Or a little

4  later?

5          THE COURT:  That was where I -- when I had a matter.

6  What time works with those?

7          MS. TIRRE:  I'm thinking for myself, frankly, 11

8  a.m., Pacific Time, 8 a.m. my time, and then that would be 7

9  p.m., Mr. Gagnon's time.  So that's my proposal if that would

10 work for everyone.

11         THE COURT:  I believe that would work.

12         MR. LEHNERS:  My whole day is free, Your Honor.

13         THE COURT:  Okay.

14         MR. LEHNERS:  And so is Mr. Burke's.

15         THE COURT:  Mr. Burke?

16         MR. LEHNER:  Yeah.

17         MR. BUBALA:  Your Honor, that's fine.  We're now

18 pushing -- we're essentially taken the two weeks of the delay

19 of the effect -- or, yeah, the time for appeal.  I guess we --

20 I'm not entirely sure how this would work, but some sort of

21 waiver of the 14 days?  I don't -- I'm not sure that I can do

22 that.

23         MS. FLETCHER:  That's available.

24         THE COURT:  I don't think you know -- well, I mean,

25 I'm certainly not prepared without writing to waive the

1  appellate appeal process.  What you can do is go ahead and

2  draft it up and circulate it.  I mean --

3         MR. BUBALA:  Well, I guess, again, this requires

4  consent of probably a bunch of parties, but except for Mr.

5  Adams, we're here.  If we can get an order prepared without the

6  end designation and entered, so that there is a final order,

7  and if there has to be amended to add the "M."  But again,

8  we're talking -- now we're talking 19 plus 14 -- what, 33 days

9  before we get a non, you know, a final order based on the delay

10  in Mr. Gagnon's examination.

11         You know, you've seen this case long enough, Your

12  Honor, where concerns are -- we don't know anything about the

13  performance of Empire.  We don't know about anything about its

14  relationship to the debtor or to Jex.  And we've done a number

15  of continuances in this case over -- in circumstances which you

16  granted, but you grant in your discretion.

17         MS. TIRRE:  Your Honor, I -- this is a bit -- just

18  speaking as an outsider, I'm not certain what the concern is

19  about timing with respect to my client's performance.  I

20  believe I've satisfied, at least the trustee's concern, and

21  that's the party who's exercising its business judgment, you

22  know?  So if there has to be a little delay, there's a little

23  delay, but I'm not -- there's no intent behind that, Your

24  Honor.  We're just -- I'm just wondering what the rush is.

25         MR. BUBALA:  Well, Your Honor, Ms. Tirre's has not

1   been participating in, living, breathing this case for two-plus

2   years here, plus the two plus years before Judge Du and Judge

3   Pro.  You know, her perception of timing is probably not

4   consistent with every other party in this case.

5           THE COURT:  I get that.

6           Mr. Lehners, do you want to weigh in?

7           MR. LEHNERS:  Sure.  Your Honor, I was actually

8   planning on starting on the order today, and I will, because I

9   like to do it while everything's fresh in my mind and in my

10  notes.  I will get that order done as quickly as I can, minus

11  the 363(m) language, and I will circulate it to counsel.  I

12  will have that done, hopefully, by Monday.

13          THE COURT:  All right.

14          MR. LEHNERS:  If not tomorrow.

15          THE COURT:  I -- a couple of --

16          Ms. Ostrow, do care to weigh in on any of this?  I

17  don't want to leave you --

18          MS. OSTROW:  Yeah, thank you, Your Honor.  It was a

19  little difficult for me to hear Mr. Lehners.  I've got it as

20  high up in my volume as I can so --

21          But I think that I'm a little concerned about the

22  delay as well, but I don't have my client's position on it, but

23  I'd love to see a sale order circulated so we can start looking

24  at it.  So that's only -- that's our position right now.

25          And I do wonder if we have the hearing on the 363(m)

1  finding on the 17th, if we can get -- so that the affidavit --

2  I know Ms. Tirre is going to Hawaii.  I don't want to mess with

3  her vacation.  Is that still one of the offers is to have the

4  affidavit by Monday?

5          THE COURT:  Ms. Tirre, Ms. Ostrow is asking about

6  when the affidavit or the declaration will be filed.

7          MS. TIRRE:  Right.  So Your Honor, since now it's

8  Monday, the 17th, this is just -- I'll be happy to work all

9  weekend.  I'm on a plane on Monday.  I'll be settled in front

10  of a computer again, let's say on Tuesday.  I'd like to have to

11  have through close of business on Tuesday if I can.

12          THE COURT:  Ms. Ostrow?

13          MS. OSTROW:  Oh, okay.  And then, her proposal is no

14  363(m) finding in the order because they want the clock to

15  start ticking for the appeal.  It -- I'm -- I think they might

16  work for a backup bid.  So I think there's a couple of

17  concerns, Your Honor, just that the backup bid for Jex and

18  Dr. Seal, I don't know his position, but that -- the 363(m), I

19  don't know if that matters from the back, we're just backup

20  bid.

21          So I don't think that would matter to my client, but

22  I would need to just process that a little bit longer.  But I

23  would like to see a form be ordered.  We're -- either of those

24  kind of 363(m) findings.  And we may be willing to consent to

25  have that entered before the evidentiary hearing.  But that was

1  a lot of maybes, but I'd love to start working on that sale

2  order.

3              MR. BUBALA: Your Honor if I could propose an

4  alternative?  That a basic form order be entered granting the

5  sale, triggering the 14 days plus the five days to pay, with a

6  separate entry later of findings of facts and conclusions of

7  law.  And then if we have to amend to include the M designation

8  on the order that -- we could do that.  That way we don't have

9  to log jam everything into whatever the one written order is,

10  so bifurcate the order and the findings of facts.

11              MR. LEHNERS:  Your Honor, may I please briefly

12  comment on that?  I think Mr. Bubala raises an excellent point.

13  However, in the event that's it's an interim order, it will not

14  be a final order and it will not be appealable because it

15  doesn't resolve all issues between all parties.  In order to

16  trigger the 14 days on appeal, it must be final.  That's my

17  only thought.

18              THE COURT:  The parties are running quickly over some

19  treacherous ground.  And, you know, in -- we just had a BAP CLE

20  where we warned parties, "Don't do findings of fact after the

21  order; bad things happen."  So I am concerned about that.  I am

22  concerned about the finality aspects of it.  I think that

23  there's -- it's possible, but -- and --

24              MS. OSTROW:  And Your Honor, I -- oh, sorry.

25              THE COURT:  Ms. Ostrow, go ahead.

```
 1              MS. OSTROW:  Your Honor, I would -- I don't believe
 2   Jex would agree to a separate form -- a separate entry of the
 3   standard order.  We -- there are -- as the Court is aware, we
 4   had multiple issues that we would like to be -- like to see in
 5   a final order approving any sale --
 6              THE COURT:  Okay.
 7              MS. OSTROW:   -- protecting certain rights that Jex
 8   raised at the hearing.
 9              THE COURT:  All right.  I think Ms. Ostrow also
10   raised a good point as to what the trustee wants us -- the good
11   faith finding as to the backup.  Better?
12              MR. LEHNERS:  Yes.
13              MS. TIRRE:  Yes.
14              THE COURT:  That's going to require some evidence,
15   too.  I mean, Jex has been -- throughout this case, I've never
16   fully understood its relationship to Dr. Seal, and therefore,
17   Metal Recovery.  So that at least has to be detailed before I
18   can make any finding of good faith backup purchase.
19              MR. LEHNERS:  Your Honor, what you're basically
20   saying is that we need the testimony of Ms. Tirre's client, as
21   well as Jex, in order to make a full 363(m) finding because Jex
22   is the backup.
23              THE COURT:  I -- yes.
24              MR. LEHNERS:  I concur.
25              THE COURT:  So, you know, the good thing about
```

1  wearing the robe is we'll have the hearing on Monday.  I'll

2  expect affidavits or declarations to be filed by Wednesday.

3          MS. TIRRE:  Wednesday?  Okay.

4          THE COURT:  All right?  And then, we'll do this by

5  Zoom.  Hopefully, that will cure the problems we're having with

6  the audio.  And I apologize.  Ms. Ostrow, are you having

7  trouble hearing us?

8          MS. OSTROW:  I can hear you, Your Honor.  I have a

9  hard time hearing some the other parties --

10          THE COURT:  Okay.

11          MS. OSTROW:   -- in the hearing.

12          THE COURT:  All right.  So I think that's just what

13  we'll do.  I understand the concerns.

14          MR. BUBALA:  Your Honor, we waive -- we'll

15  withdraw --

16          THE COURT:  Yeah.

17          MR. BUBALA:   -- our concerns.

18          THE COURT:  All right.

19          MR. BUBALA:  You don't need to address them.

20          THE COURT:  You know, it's life.

21          MR. BUBALA:  Right.

22          THE COURT:  So whatever.

23          MR. BUBALA:  And I -- I'm sorry.  Is a Jex

24  representative also going to be examined at that hearing?  Is

25  that what --

```
 1                THE COURT:  If --

 2                MR. BUBALA:  I was unclear.

 3                THE COURT:  Well, I assume if they want the benefit

 4   of a 363(m).

 5                Ms. Ostrow, will you be submitting a declaration and

 6   making a witness available?

 7                MS. OSTROW:  I'll speak to my client about it.  Part

 8   of the -- yeah.  I'll speak to my client, Your Honor, and see

 9   what we'd like to do going forward --

10                THE COURT:  Yeah.

11                MS. OSTROW:   -- with that --

12                THE COURT:  All right.

13                MS. OSTROW:   -- plan.

14                THE COURT:  Okay.

15                MS. OSTROW:  Thank you, Judge.

16                THE COURT:  All right.  We'll see where that takes

17   us, but we'll expect --

18                MS. OSTROW:  And --

19                THE COURT:   -- any declarations in support of a

20   363(m) determination to be filed by the close of business on

21   Wednesday.  And the witnesses must be made available for cross-

22   examination at the Monday hearing.  I think we set that at

23   eleven o'clock.  The amount of time?

24                MR. BUBALA:  Your Honor, and one final twist, I think

25   it takes two to tango on a good faith finding, and so, I think
```

 1  we would like to have Mr. Seal available to be examined at the

 2  same time.

 3            THE COURT:  It -- to the extent he is part of the

 4  purchase --

 5            MS. FLETCHER:  He's the backup, Your Honor.

 6            MR. BUBALA:  Well, he's part of the selling entity.

 7            THE COURT:  No, he --

 8            MS. FLETCHER:  No, he's part of the backup plan.

 9            MR. BUBALA:   -- or potentially part of the backup

10  buyer.

11            MS. FLETCHER:  Uh-huh.

12            THE COURT:  He's part of the backup buyer.  Yes.

13            MS. FLETCHER:  Right.

14            THE COURT:  Yes.  Ms. Fletcher?

15            MS. FLETCHER:  Yeah, yes, Your Honor.  Liz Fletcher,

16  for Dr. Seal.  I don't -- I think he's out of town.  I can --

17  I'll check with him and see.  Is -- can he testify over Zoom?

18            THE COURT:  Yes.

19            MS. FLETCHER:  Okay.  I'll check with him and see.

20            THE COURT:  Yeah.  And I understand --

21            MS. OSTROW:  And Your Honor, can I -- oh, apologies.

22  Your Honor, can I have one additional -- I will submit these

23  affidavits on Wednesday.  I do think, you know, GLA's concern

24  about how long things are taking, I appreciate that, and I

25  think it would be worthwhile, if GLA counsel wants to reach out

1   and have additional questions as well.  I understand the Court

2   wants the affidavits, but to the extent of the parties can

3   communicate and have discussions about, you know, what

4   additional information they would like, I think a lot of

5   information can be -- we can try to resolve this instead of

6   having yet again, more and more time go by.  So I just think

7   that we can all communicate together as well as we get these

8   affidavits together.

9              THE COURT:  I always am a huge advocate of calling

10  and going through the issues.  There is a concern, potentially

11  about the scope of the inquiries and testimony to be given, and

12  we are only dealing with 363(m).  I am looking at those

13  standards, arm's length, no collusion, you know, so those

14  standards are pretty well set.  But, you know, I still need the

15  testimony to hit those benchmarks.

16             So Monday, the 17th, at 11 a.m., Nevada time, via

17  Zoom, and we will expect the declarations by Wednesday.  And I

18  turned off my -- I don't know, it was -- what date is that?

19  The 12th?

20             MS. FLETCHER:  The 12th.

21             THE COURT:  Okay, 12th.  All right.  Any other

22  questions or comments?

23             MR. BUBALA:  Do we need to issue a trial subpoena or

24  is -- I mean, I'm happy to do it, but --

25             THE COURT:  I don't -- I haven't looked into that,

1  but, as I indicated, the price of admission of the direct is

2  the availability of the witness on cross.

3              MR. BUBALA:  Sure.

4              THE COURT:  So I think it's kind of -- yeah, you've

5  got to be there to have it; otherwise, the order will be

6  entered without a 363(m).

7              MS. FLETCHER:  That's the alternative.

8              THE COURT:  That's the alternative.

9              MR. BUBALA:  Fair enough, Your Honor.  Thank you.

10             THE COURT:  Ms. Fletcher?

11             MS. FLETCHER:  Your Honor, just one more thing --

12             THE COURT:  No problem.

13             MS. FLETCHER:  -- do you want a declaration from

14  Dr. Seal as well?

15             THE COURT:  To the extent -- yes.

16             MS. FLETCHER:  Okay.

17             THE COURT:  To the extent that the backup bid was the

18  one that bifurcated the split between the --

19             MS. FLETCHER:  Right.

20             THE COURT:  -- two, so he is part of that.

21             MS. FLETCHER:  Okay.

22             THE COURT:  And I'll leave it to you as to what that

23  means throughout the 363(m) --

24             MS. FLETCHER:  Okay.

25             The COURT:  -- analysis, but thank you.

1              MS. FLETCHER:  Okay.  Thank you, Your Honor.

2              THE COURT:  All right then.  Well, hopefully this

3    moves us along.  I understand that it's another week, but it's

4    another week, and we'll take it up then.

5              So again, thank you again.  I, again, I at least am

6    comforted by the fact that the decision to come down here for

7    this seems to be a good one.  Not all of them are, but I

8    thought it helped.  I was glad to be able to do this in person.

9              MS. FLETCHER:  Thank you.

10             THE COURT:  So, thank you, I hope everybody has a

11   good weekend.  We'll go ahead and conclude the hearing.  We're

12   adjourned.  Off the record.

13             MR. LEHNERS:  Thank you, Your Honor.

14             MR. BUBALA:  Thank you, Your Honor.

15             MR. OINES:  Thank you, Your Honor.

16        (Proceedings concluded at 12:09 p.m.)

17                         * * * * *

18

19

20

21

22

23

24

25

1                        **C E R T I F I C A T I O N**

2

3            I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   _____

11   ALICIA JARRETT, AAERT NO. 428      DATE: February 21, 2023

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25